You'll hear argument first this morning in Case 15-628, Salman v. United States. Ms. Shapiro. Mr. Chief Justice, and may it please the Court, in case after case, McNally, Skilling, and McDonald, to name just a few, this Court has construed Federal criminal statutes narrowly to avoid serious separation of powers and vagueness problems. This case presents those same constitutional concerns, but to a far greater degree because no statute defines the elements of the crime. The Court should limit this crime to its core, as it did in Skilling. And that core is the insider's abuse of confidential corporate information for personal profit. Unless and until Congress enacts a definition, the crime should be limited to trading by the insider or its functional equivalent, where the insider tips another person in exchange for a financial benefit. Ginsburg. Suppose in this case the person with the inside information, the brother with the inside information, had himself traded the securities and then gave the proceeds to his, what was it, his older brother. Would that have violated 10b? Yes, Your Honor. So what's the difference? If the insider trades and gives it, makes the proceeds a gift, or if he just says, you do the trade, here's the gift? The difference, Your Honor, is that the transaction, the securities transaction is complete when the insider trades, and this is a statute that doesn't even mention insider trading, much less tipping or personal benefit. And so in that instance, it wouldn't be covered, and he can do whatever he wants with the money. If we think the question isn't, in her instance, where the tippee does the trading. The tippee is just an accomplice. This is standard accomplice stuff. Well, no, Your Honor. This statute, this is a case where we have to take a step back and look at the fact that the statute doesn't define the elements. It doesn't even mention insider trading, much less tipping. And the the the whereas Dirks and Chiarella before it make clear that not all trading on inside information is unlawful, and what makes it unlawful is that the insider is doing it for personal gain, whether trading himself and profiting on the information by doing so or whether it's by circumventing that rule as discussed in Dirks and essentially giving the information to someone else so that he can get a financial kickback. That's the core. Roberts. Maybe I'm missing, maybe one of us is missing the import of the question. Are you suggesting that if two people get together, one of them has inside information, and he says to the other person, why don't the two of us, why don't you trade on that, and then you and I will split the proceeds? That's not covered? That is covered, Your Honor. Oh, okay. I'm sorry. What I meant was that if the insider, as occurred in this case, and it's undisputed in this case, did not act for any financial gain, did not make any money at all, that's what's not covered. Don't you think that his brother's statement, when he was asked about trading by Meyer, the younger brother, he said, I owe somebody money? Isn't that most naturally read to be either give me the money to pay this person back or give me information that lets me pay him back? Isn't that always the quid pro quo of a gift, that you believe that if you give someone a gift, it's going to cost you one way or another. You're going to give them something of value, or you're going to substitute money for the gift, or you're going to do something that saves you money by giving the tip? Well, Your Honor, I think the problem with that is that virtually anything would any disclosure would then amount to a gift. And this Court has been crystal clear that not any disclosure leads to a violation of penalty. Sotomayor That's true, but then comes the government's suggestion that the disclosure has to be for a personal benefit or a personal purpose, that there has to be a reason you're doing it, not accidentally, not unknowingly, but something you're doing because you want to receive some benefit from it. Well, in this case, it's quite clear that Meagher did the insider brother didn't receive any benefit at all, and indeed, the district court and the SEC made that clear. He did not do this for any kind of self-benefit, and I think the evidence in the record, even construed in the light most favorable to the government as it must be, demonstrates that at most, the insider got the scant benefit of getting his brother off his back. This was not a willing transfer of inside information. Breyer But why do you say it's scant? Sotomayor Well, Your Honor, I think we have to get back to the fact that this ---- Breyer No, my bigger question is why do all the disclosure forms we have to fill out, they have a lot of relatives you have to put, like your minor children, your wife, and giving gifts, you have to disclose your minor children, your wife. I mean, why are the statute books filled with instances where the public wants to know not just how you might benefit, but how your family might benefit? Sotomayor Well, Your Honor, the statute books are filled with rules like that, but section 10b says ---- Breyer Because no, no, I realize it doesn't, but I mean, I'm looking for the reason why. And, of course, I can suggest a reason, because they think very often, though it depends on families, to help a close family member is like helping yourself. Now, that's not true of all families. Sotomayor Well, Your Honor ---- Breyer But many it is. Sotomayor I think that the important thing here is that the statute doesn't address this, and Congress could certainly pass the statute. Breyer No, no, but it addresses benefits. Sotomayor No, the statute ---- Breyer No, I think it addresses benefits. And the question I take it is when you use it to benefit a person who's being defrauded, I take it, or an object of deceit, is the company whose information you use. And when you use their information, which you shouldn't, and tell it to someone, you're hurting them. And then there is a subset of cases that we prosecute. And the subset of cases that we prosecute are the cases where, having used that information, you use it to benefit yourself. And the question I take it is when you use it to benefit a close family member, is that, in effect, benefiting yourself. Cecil B. DeMille said, or maybe Jack Warner, rule of relativity, never hire a relative. You could have that view, but you also have the view that helping a relative is helping yourself. Now, that seems to be where we are in this case, and the law is filled with instances where they do seem to think it's the same. And there are a lot of cases here that think it's about the same. So why isn't it? Sullivan. Well, Your Honor, there aren't a lot of cases, and the only cases that this Court has decided are Chiarella, Dirks, and O'Hagan. The only case in which the Court held for the government was O'Hagan and the insider was making his own profits to the tune of $4. Kagan. Kagan you're asking us to ignore some extremely specific language in Dirks, which, of course, was decided quite some time ago. So I'm just going to read. In Dirks the Court is talking about when it would be proper under the statute to convict somebody for insider trading. It's because there might be a relationship between the insider and the recipient or an intention to benefit the particular recipient. And then it goes on to say when an insider makes a gift of confidential information to a trading relative or friend. And then in the last paragraph of the opinion, where it's really summing up everything that it's done, the Court says the tippers received no monetary or personal benefit, nor was their purpose to make a gift of valuable information to the tippee. So there's a lot of language in Dirks which is very specific about it's not only when there's a quid pro quo from the tippee to the tipper, but when the tipper makes a gift to the tippee, and in particular a relative or friend. That's right, Your Honor. Dirks does mention gifts, but I don't think that's kind of the case. More than mention. This is like half their holding. Well, I don't agree, Your Honor. Dirks mentions gifts in two places, but the – I believe that it's dictum, and that the holding of the case is far different. And dictum should not be used to be the basis for criminal liability when we have a statute that doesn't address personal benefit. I don't know what dictum means. The Court is very clearly setting out a test here, and this is part of the test. And it's certainly not dictum in Dirks when the Court says, thus, the test is whether the insider personally will benefit, directly or indirectly, from his disclosure. I agree with you, Justice Kennedy, and, in fact, the Court goes on to then say right after that, absent some personal gain, there has been no breach of duty to stockholders. And personal – But we're talking about benefit and personal gain, and Dirks says there's a benefit in making a gift. Now, it's true in the law of gifts we don't generally talk about benefit to the donor or, like, other than in gift tax, but that's for different reasons. No. In fact, the opposite. In most areas of the law, a gift is supposed to be something that is not intended to benefit the giver. And it's critical in this area, and I think the Securities Industry Association brief illustrates this point, but many of the other briefs do that. Kennedy, as Justice Breyer points out, you certainly benefit from giving to your family. Well, I just want to be very clear about this. It ennobles you and, in a sense, it helps you financially because you make them more secure. Well, I want to be very clear about the test that we're proposing, because I do think that it's going to capture a number of these family situations. The point is that the line has to be clear, whether it's family or anyone else, that the disclosure is being given to. And under the pecuniary gain test that we propose, certainly there will be many cases where the government can introduce evidence showing the kind of financial interdependence that will illustrate that the insider does benefit financially from the disclosure. I'm sure that's going to be true in most situations involving spouses and many other situations involving close relatives. Kagan. Ms. Shapiro, I mean, let me give you a hypothetical. Let's suppose I would like to give a gift to a friend of mine, but it's just too expensive for me to give it. And then I pass a co-worker's desk and I see a $100 bill sitting there, and I take the $100 bill, and now I can give a gift that I had wanted to give, but I couldn't. Now, have I benefited from stealing the $100 bill? Yes, Your Honor. Yes, you have. And why should the issue be any different if instead of stealing the $100 bill off my co-worker's desk, I instead steal information and give the gift of that information rather than give a gift of cash? Well, there's certainly going to be some situations involving gifts that will be covered. So, for example, if I have a tradition every once a year at Christmastime to give a household employee a bonus, and one year I decide to give her a tip instead, that would certainly qualify. It's going to depend on the nature of the evidence and whether there's ample showing that ---- Kagan, I think what I'm suggesting by the hypothetical is that we all have our own interests and purposes behind giving gifts. Some of those might be very practical and pragmatic. Some of them might be more altruistic. But we give gifts for individual interests and purposes. And here, I'm stealing corporate information. It's essentially a kind of embezzlement or conversion. I'm stealing information to give a gift to somebody I know. It might be, as in this case, a family member. It might be a friend. And I benefit from that because, I mean, it's the exact ---- I personally benefit. It's the exact opposite of using corporate information for corporate purposes. I'm using it for my own personal purposes. But, Your Honor, that would be true in virtually any instance one could think of where an insider disclosed confidential corporate information, whether it's in a business setting or, as is often the case, a mixed social and business setting. Analysts talk to company insiders all the time, and it's essential to the free flow of information to the marketplace that that occurs. And if the concept ---- Sotomayor, first of all, that's no longer true. There's regulations that stop that, talking to analysts. But talk about the culpability question. Why is it any less culpable to give your close relative, who you've been supporting every month for your entire life, so instead of giving him one month or two months, that regular $100 bill, you choose to give him corporate information? That's Justice Kagan's example. Why is that person more culpable than the person who just ---- a relative comes and says, it would be nice, I need some money, and you give him a tip instead of the cash? I think the issue is that there has to be a clear line. We're dealing with a crime that was never defined by Congress. None of these words are in the statute. But Congress doesn't define what's deceptive or manipulative or what's the third word. It doesn't define what defrauds. It has general words. Don't devise a scheme that does these things. The law has for ages said that the failure to speak when you're obligated to, i.e., an insider who doesn't disclose that he's using your information, is an omission. That's been classically a fraud. So I don't understand why you keep saying that the law doesn't define this. Because, Your Honor, the law says nothing about insider trading. And as the Chiarella court said, the statute provides no specific guidance, nor does the legislative history. In any ---- this is very similar to the honest services fraud crime or, indeed, before that statute was enacted, the mail fraud statute that existed before the McNally case. The statute talked about fraud. The honest services fraud statute talked about fraud. But it provided no specific guidance as to what would violate. And this Court held that the statute needed to be construed narrowly to ensure that there was a clear line. Other countries have insider trading laws, and all of those laws use words like insider and define under what circumstances a person is violating the law by trading. This Court has repeatedly held that there is no general duty to refrain from insider trading, and it's essential that the market participants understand when the line is crossed and when it's not. Breyer, I agree with that. But, Your Honor, but, Justice Breyer? I agree with that. But it seems to me the analogy is the antitrust laws, very vague statute. They've been around a long time. Exactly what's criminal and what's civil and so forth has been developed by courts over a long time. This statute's been around since the 30s, and we have courts developing law in it. And I believe the marketplace pays a lot of attention to that. And virtually every court, I think, but this one, has held that this does extend to a tipper giving inside information to a close relative. And it seems to me, and I'm giving you a chance to respond to this, that suddenly to take the minority statute here, or to take the Second Circuit is what I'm thinking of, is really more likely to change the law that people have come to rely upon than it is to keep to it. I want to get your view on that. I don't think so, Your Honor. And I think some of the amicus briefs illustrate that there's been a tremendous amount of murkiness, and the Securities Industry Association, in particular, has had a lot of trouble determining its members have had a lot of trouble determining when they can and can't use market information of this sort. And Regulation F.D., by the way, is very clear that it does not purport to change the antifraud laws. The regulation itself provides that a violation of Regulation F.D. does not in and of itself constitute insider trading under 10b. Kennedy, that addresses whether or not there's an initial breach. Here we assume there's an initial breach. The question is how far out does liability extend? So it seems to me that what you're saying doesn't quite address the problem that we're discussing. No, Justice Kennedy, I don't agree with that, because what this Court has repeatedly held in a number of cases, going back to the Santa Fe case, is that not every breach of fiduciary duty violates Section 10b. And it has to be a fraudulent breach, and the question of whether it's a fraudulent breach depends upon whether the insider is doing the disclosing in exchange for a personal benefit. That's the test. It's not simply whether there's any old breach of fiduciary duty. Indeed, one could argue that in the Dirks case, that the insider there, Sechris, was breaching his fiduciary duty. Ginsburg. If Dirks is the test, and it certainly was phrased as a test, and that's how Judge Rakoff understood it, if it is the test, then this case falls within it, because it's a gift, right? I don't agree with that, Your Honor. I think that the facts of this case show that there may be many family circumstances where this would be a gift, but I think the facts of this case show that the insider was not he was being pestered by his brother and pressured to release the information he didn't even know he was trading until later in the process, and even then, the largest trade in this case involves a situation where he immediately called his brother back and begged him not to trade, and the brother said he wouldn't. So I don't agree with that, Your Honor. But I think it is essential, in order for there to be a clear line, that the Court hold that the insider must personally benefit in a concrete way, unless and until Congress, if that's an under-inclusive test, Congress can act. Congress can change the law, and if he's been pestered, is no longer being pestered. Well, if that's a benefit, then virtually anything is, and then the Court would be going back to the rule that expressly rejected in Chiarella, reaffirmed in Dirks, and even in the O'Hagan case, that there isn't a general duty not to refrain from to refrain from insider trading. Those that the you phrased it in terms of a concrete personal benefit. I take it you agree it doesn't have to be purely financial. The examples the government gave, a preference for a child in college admissions, romantic favors, the personal benefit, you say, just has to be tangible and concrete, but it doesn't have to be money, right? It doesn't necessarily have to be money. It has to be something concrete. Is that your defining limit? It has to be tangible? It has to be tangible. It doesn't have to be cash. It has to be something that is either immediately pecuniary or can be translated into financial value. Sotomayor, if we disagree with you because of the gift language of Dirks, how else could you suggest to limit liability? What other ways are there to take care of some of the closer cases that exist? The ESG has given us one proposal. What's yours, besides the fact that it has to be a tangible benefit? I don't think there's any other test that the Court could provide that wouldn't essentially be a judicial expansion retroactively of a statute that doesn't address the question in violation of the separation of powers. I think that the other thing that I would like to come back to, which we talk about in the briefs, is the fact that there's a very analogous situation with respect to the private right of action in 10b, which was also created by the courts. And this Court has repeatedly held that in that context, which is not in criminal context and does not involve the risk to a person's liberty, that the Court must narrowly construe the statute and not expand it further, and it's for Congress to decide whether to expand it further. And I think it's not a question of expanding it further. You're asking us to cut back significantly from something that we said several decades ago, something that Congress has shown no indication that it's unhappy with, and in a context in which, I mean, obviously, the integrity of the markets are a very important thing for this country, and you're asking us essentially to change the rules in a way that threatens that integrity. No, Your Honor. I don't think we're asking you to change the rules. This Court has only addressed this question once. I don't think the gift language is the holding of the case. The holding of the case is that the insider has to get a personal gain. The point of the test in the case, which, again, ruled against the government, is to ensure that what's captured is something that is essentially a circumvention of the test the Court discussed in Chiarello, where the insider is improperly profiting from the information. And with respect to the integrity of the markets ---- Ginsburg. And Chiarello really wasn't an insider. He was the printer who got the information, but he was he didn't have any fiduciary duty to the corporation. That's correct. I was referring to the discussion in the case about when a duty would arise. And the Court in that case held that there was no duty, but that a duty would have arisen if he had been an insider in the company whose shares were at issue. And the reason for that is that the Court held that it would be a fraud to exploit the information for his personal trading profits because he had a duty to those shareholders and a duty to speak and either disclose or abstain from trading. With respect to the integrity of the markets, getting back to your question, Justice Kagan, I think that that is clearly a policy question, and it is a very complex policy question. It is not as one nearly as simple as the government would like to have the Court believe. And I think there's an extensive literature, which is cited in our briefs and some of the amicus briefs, which illustrates that there's a robust debate among academics, regulators, market participants about what is the ---- whether insider trading should be regulated at all, but more importantly, to what extent, and how do you do that while ensuring that there's sufficient free flow of information to the markets that this information can actually work its way into the price? Kagan. Kagan. Kagan. I was suggesting that it's a reason for caution in changing a 30-year-old rule that everybody has understood and lived by. And the Congress has shown no intent to do that. It's just a general indication it's unhappy with. Your Honor, may I reserve the remainder of my time for Revelle? Sure. Thank you. Mr. Dreeben. Mr. Chief Justice, and may it please the Court, under a pecuniary gain limitation to the personal benefit test in Dirks, a corporate insider possessing very valuable nonpublic material information could parcel it out to favored friends, family members, and acquaintances who could all use it in trading without the knowledge of the public or the investors on the other side of the trade. This would be deleterious to the integrity of the securities markets, it would injure investor confidence, and it would contradict a 33-year-old precedent of this Court that was designed to announce the circumstances in which material nonpublic information possessed by an insider could not be used. Isn't it something of a stretch to say that the circumstance you describe, widespread dissemination, are all gifts? So some of them may be gifts. Some of them may be to obtain a reputational benefit that might translate in the future into pecuniary gain. Some of them might actually involve a quid pro quo. My point is that under Petitioner's theory, when they are gifts, in other words, when the information is given out to a romantic partner or to a struggling child who's having difficulty making it, or as in this case, a brother who at one point actually was offered money by the insider but turned it down and preferred the information, those things would not be criminal. Roberts, Well, not everything is a gift just because it's disclosed. I mean, social acquaintances, you know, the people say, you know, we're all going away for the weekend, why don't you join us? I can't. I'm working on this Google thing or something like that, and it means something to the other people. You wouldn't call that a gift. You'd call it a social interchange, and maybe it's, you know, something you should have been more careful about saying. But it's quite different than a gift, and it seems to me that however you read Dirks, it certainly doesn't go beyond gifts. Dreeben So I don't disagree with that, Mr. Chief Justice. There is a difference between a breach of the duty of confidentiality with respect to information and the kind of breach that was defined by the SEC in Cady Roberts and incorporated into the law of securities fraud in this Court's decisions in Chiarella and Dirks, and it has two elements to it. The first element is that the information was made available to the insider for a corporate purpose and not for personal benefit or personal use. And the second is that the insider is providing it for the purpose of obtaining a personal advantage, either for himself or somebody else. Roberts. So then the social, casual social interchange, I hypothesized, would not be covered under your interpretation? Dreeben It would not be a personal benefit. Now, it might give rise to liability on the part of the TIP-E if there was an understanding between the parties, the insider and the TIP-E, that conversations of that kind would remain confidential. Roberts. It's kind of a hazy line to draw, isn't it, between something that you characterize as a gift and something that would be characterized as social interaction, isn't it? Dreeben No, I don't think it's hazy at all. Roberts. Does it depend how close a friend the friends are going away for the weekend, how close the friends are? Dreeben There may be some advantages. I want to give him a gift because we've been great friends for so many years, as opposed to I just want to tell him why I can't come. Dreeben So the burden is on the government to show that the information was given for a purpose of trading and that it was in breach of fiduciary duty. And in most of these cases, there's no evidence of any legitimate corporate purpose for the disclosure whatsoever. Breyer The difficult part is for a personal advantage, at least to me. And the question is, what counts if the tipper gives inside information to a member, a family member or friend? When is it for a personal advantage and when is it not for a personal advantage? Dreeben So I think, Justice Breyer, that whenever information is given, it's inside information, it's given by an insider to another person for that person to be able to profit on it, something that the insider himself is forbidden to do. Breyer So if you know that if you give it to your anyone in the world and whom you happen to know and you believe that that person will trade on it, that is for a personal advantage? Dreeben Yes. Breyer Yes? What is the personal advantage? Dreeben You have taken valuable corporate information and you're giving a gift of that information to a person to enable them to profit. Breyer Okay. So what is the personal advantage that you received? Dreeben The advantage that you receive is that you are able to make a gift with somebody else's property. And I think that to the extent that the Court used the word that is a personal advantage. Well, Justice Breyer, let me step back for a minute. What the Court was trying to do in Dirks was separate out when an insider was breaching his fiduciary duty by providing information and when he was not. And the line that the Court selected tracks the basic duty of loyalty in corporate law. Alito It doesn't seem to me that your argument is much more consistent with Dirks than Ms. Shapiro's. Now, suppose someone, the insider is walking down the street and sees someone who has a really unhappy look on his face and says, I want to do something to make this person's day. And so he provides the inside information to that person and says, you can make some money if you trade on this. Is that a violation? Dreeben Yes. And I'm trying to explain why that is. I think that Dirks adopted the basic line that's set forth in the duty of loyalty, which is well established that when you are given something for corporate purposes, you may not use it for personal reasons. And that was exactly what the Court adopted when it was used. Breyer Why did they use the word advantage? You keep going back to the part that everybody concedes. This tipper is using information he shouldn't use. In a way, he shouldn't use it. Okay? Conceded. Now, it's the next step of when is he liable and what the words are is when he uses it for a personal advantage. And it sounds to me as you are saying, and you said this. Whenever the tipper knows that the person to whom he gives the information might well use it to trade — Dreeben No. I did not say that, Justice Breyer. Breyer What did you say? Dreeben Let me clarify this. Breyer Yes. Dreeben What the Court said in Dirks was that it was drawing a line between people who had information for corporate purposes and used it consistently with those purposes, and people who had access to corporate information made available to them only for corporate purposes and used it for personal benefit. And it gave a number of examples, and I think that the way to understand Dirks is to synthesize the various examples the Court gave to understand the principle underlying the decision. So the examples go ahead. The examples include direct quid pro quo profiting, clearly a personal benefit. It also includes something far less tangible, a reputational benefit that will possibly translate in the future into financial advantage. And then it clearly included in the category of things that were not appropriate corporate purposes giving a gift to somebody, and it explained why. If you give a gift of information to somebody for trading, it is equivalent to the insider using the information to trade himself and then making a gift of the profits to the recipient. Roberts, So you are arguing for an exact relationship between not for a corporate purpose and for a personal benefit. Is there any area that something falls in the middle of that, that it's not for a corporate purpose, but it also doesn't qualify as for a personal benefit? Whenever you're talking about how do you define personal gain, personal benefit, you say this was given, not given to him for a corporate purpose. So is it an exact parallel? I think it is, Mr. Chief Justice. So any disclosure of any confidential information is actionable under the view because it was not given to him to disclose. No. That is the difference between the breach of a duty of confidentiality, which may have to do with the corporate officer's duty of care, as distinct from the duty of loyalty. Well, give me the example of something that is not for a corporate purpose, but is also not for personal gain under your view. When there's no knowledge that the individual to whom you're going to give the information is trading, there's no breach of the Katie Roberts duty. So in your hypothetical of the social conversation, the government would not seek to hold liable somebody who was loose in their conversations, but had no anticipation that there would be trading. Well, I'm not interested in who the government would seek to have liable. I'm interested in what the rule is going to be. I'm equating the two, Mr. Chief Justice. I'm not suggesting that we are. This Court has not equated the two. I understand. But I think that the rule that we're asking the Court to adopt is really a rule that detracts the basic principles of duty of loyalty that lie at the base of the Dirk's opinion. And I realize that the Dirk's opinion used language in it. It used a variety of formulations, personal benefit, personal advantage, personal gain, but the examples that the Court give, gave to support that doctrinal analysis, I think, lead to the conclusion that what Justice Powell was trying to do in the opinion was to distinguish cases in which somebody was a corporate officer and they used the information for an appropriate purpose, maybe somebody went out and traded on it afterwards. Sotomayor, I'm not sure that your solution is going to clarify much of this area, because now I think the fight is going to be over what was the reason that the tip or gave for giving the tip. I mean, in this very case, there were three reasons for breaching the rule of confidentiality. The first, to for Mayer to become more knowledgeable of the health care industry. Under your reading, if he had no knowledge his brother would trade, that was not actionable, correct? Well, correct, Justice Sotomayor, but that also was not information that was flowing from the insider to his brother. What we charged in this case were the circumstances. No, I'm not talking about that. But there were three examples of breaching confidentiality. The first was for him to become more knowledgeable of the health industry. The second was to help the father with his medical care. And the third, the one you charged, was the giving of information, knowing that his brother was going to trade on it. How do you draw the line among those three? All three were for personal reasons. No, but the only one that involved knowledge or anticipation of trading were the circumstances in which the brother was basically funding his older brother's securities trading. So you would have, he, if all he did it for was to get information for his father, had no idea that his brother was trading, he would not be liable and his brother wouldn't be liable. I agree with the first, not with the second. All right, explain. If I could explain just briefly for Justice Sotomayor, there are two theories of insider trading. One is classical insider trading, where an insider who's been given the information for a corporate purpose trades on it, or tips somebody else to trade on it. The second theory is misappropriation. And if the older brother in this instance was given confidential information under a circumstance in which there was an understanding that there would be no use of that information for personal benefit, or under the SEC's current rule, 10b-5-2, which defines these kinds of close family relationships, siblings, parents, and children, husbands and wives, as being relationships that are typically ones in which secrets are protected, the older brother could be charged with misappropriating information from the younger one. But here we're concerned with the insider's personal benefit. And my suggestion, I think, is that the insider is not the insider. And we've been talking about the two brothers. How far down the line do you go? Because Salmon is not he's a relative by marriage, but he's not, he gets the money from, I mean, he gets the tip from the first tipping. Correct. How long does it continue? Well, tipping chains can go quite a ways when the information is passed. And the limitation on when the government can charge these cases is a limitation of proof. We need to be able to show that the tippee, perhaps at the end of the chain, will be more difficult than the ones earlier in the chain, had knowledge that the information originated in a circumstance in which there was a breach of fiduciary duty for personal benefit. Had knowledge or should have known? No, in a criminal case, we have to show knowledge. Now, we can rely on conscious avoidance. That's a very classic instruction that the Court clarified in Global Tech about how knowledge can be inferred when someone deliberately avoids confirming facts of which they are or should be aware. But that involves a personal culpability that takes care of, I think, the concern that criminal liability will extend forever. It won't. And let me hear you. And looked at the other side, if you think about the tipper now, you've used a couple of times the phrase knowledge or anticipation. Yes. That there would be trading. Yes. So is that something more than he thinks there could be? Yes. I mean, he thinks there would be? Is it as strong as that? Yes. Let me give you this example, because this goes to that. So the person with the inside information has had a few drinks at the country club and is talking to some friends and discloses the inside information to the friends, and one of the friends then trades on the information. Now, what would you have to prove as to the mental state of the tipper and the tippee? As to the tipper, would you have to prove that he knew that one of the friends would trade on the inside information or that he was reckless as to whether the friend would trade on the inside information? He knew this was a person who was in the stock market. And as to the tippee, what would you have to prove? That the tippee knew that the insider knew that he was going to trade on the information? What would you have to prove? As to the tipper, we submit that an element of the Katie Roberts duty is that the insider anticipated that the person to whom he gave the information would trade. Now, you can't. Is anticipated the same as he knew he would? Yes. I think that knowledge, anticipation, understanding is the language that the Second Circuit has used to describe it, all fits the bill. We're talking here about a gift of the information. But it's not enough. It's like, well, I think he might. No. It's not enough. Or, you know, I'm sort of betting that he would, but I don't really know. No. In a criminal case, we need to show a breach of the fiduciary duty. We're also going to have to show an intent to defraud, fraudulent intent, and we're going to have to show willfulness in order to obtain a criminal conviction. So why do you want to put knowledge of the knowledge that it will be used for trading as part of the breach of fiduciary duty? If you do that, then you have to prove that the tip B knew that the tip or thought it would be traded. Yes. And I don't think that that's a very difficult burden, because in most of these situations, it's obvious why it's being done. Why can't you put it in the intent to defraud? It goes to intent to defraud. So why make it part of the breach? Because Dirks did. Dirks did. Dirks adopted the Katie Roberts formulation of the breach of duty, which, to go back to it again, it is the transmission of information that was made available only for a corporate purpose, for personal benefit, with the intent and knowledge that the individual is going to trade. Now, it doesn't have to say it has a sentence here, which is exactly what's hanging me up, and exactly what I thought you were going to answer before you got cut off. The sentence is, the elements exist also when an insider makes a gift of confidential information to a trading relative or friend. Yes. That doesn't sound as if the writer of those words had in mind any person in the world. In each instance, you have to know that that person would, in fact, use the information to trade. But it doesn't say any person in the world. It says a trading relative or friend. Yes. But this is in a portion of the opinion, Justice Breyer. Breyer, so I should read the whole opinion and so forth? No, I'm going to explain. It's in a portion of the opinion in which Justice Powell is giving examples of the concrete circumstances, objective criteria that will allow the government to establish that the purpose of the disclosure was for personal benefit as opposed to what the SEC was concerned about, that people would use ostensible business justifications to explain why the information was being given out, and the SEC was concerned this was going to create a quagmire of subjective analysis. And the Court's response was to give examples in which the objective criteria would help establish. And the confirmation of this, I think, Justice Breyer, is that at the end of the opinion, the portion that Justice Kagan read earlier today, it's on page 667, it's where the Court analyzes why Sechrist and the other insiders at Equity Funding had not occasioned liability for Dirks. Breyer, what can I read? Now, I want you to tell me what I can read to get the explanation of Dirks that the majority of lower courts have followed. It seems to me the Second Circuit has not read it as you're reading it. Correct. For after all, they came to the opposite conclusion. And are there circuits that have read it just as you have, said you walk down the street and you see somebody, you don't even know him, that he does keep saying, trading, trading, trading, trading, and you tell him, and therefore you know that he will likely trade? Now, in other words, an anonymous person, very far, just what you're arguing, what circuits have followed that? This case does not involve that situation. This case involves the classic prototypical situation that actually arises in the real world and gets prosecuted. There are very few cases that involve this hypothetical of somebody distributing inside information. Breyer, I'm not worried about that. I'm not worried so much about this case. I am worried about line drawing, and you want to draw a line so that friend, relative doesn't matter. And before I write those words, I'd like to know what circuit courts have followed that approach. So I think there aren't a lot of cases that don't involve friends or family members. I think the case that most closely tracks the analysis that I think best explains Dirks is the Seventh Circuit's decision in a case called SEC v. Mayo. It's cited in our brief. It does involve two people who were close friends, because ordinarily those are the circumstances in which people decide to risk criminal liability to give out inside information so that somebody else can profit. But the Court makes the statement in it that there was no corporate reason, there is no legitimate reason why one friend who is an insider at the corporation is giving information to a third person. He didn't have to give information at all, so why did he do it except for what the Court concluded fits within the Dirks language? Roberts, what if you have a situation where, you know, close friends or whatever and the one says, I want to tell you what I've been working on, it's pretty interesting, and tells me, but whatever you do, don't go buy stock. You can't do that. That's against the law. Right. And that is a situation where you're not going to profit. So you can't prosecute that situation when the tippee goes and makes $100,000 on it? The tipper in that situation is disclosing information in the context where he has made an express statement, and I'm assuming understandings between the two, that the information would not be used. The tipper is not liable for insider trading. The tippee, who then trades, may be charged under the misappropriation theory for having taken information from a relationship of confidence or an express statement and an agreement not to use the information, and the fraud there is between the tipper and the tippee, not between, as here, the tipper and the people to whom the tipper owes a fiduciary duty. This is explained in the SEC's Rule 10b-5-2, which helps define the kinds of relationships that support a misappropriation theory of liability. But I think, Mr. Chief Justice, what this illustrates is we are not urging a theory in which tippers are per se liable every time inside information is disclosed. This isn't a revival of the information theory that was rejected in Dirks, and I think what makes that most clear is that there are situations in which inside information can be legitimately revealed, even when it is known that it will occasion trading, and it doesn't violate the insider's fiduciary duty. Sotomayor, Mr. Dreeben, I think you're taking this way out of existing law. Are you going to suggest that tippees aren't routinely prosecuted when tippers don't know that they are going to trade? I think they are, and most often it's because you claim that they should have known it was confidential. Dreeben, So in a criminal case, we're not claiming that.  Sotomayor, there's plenty, there's a legion of cases I've read for this, for this preparing for this argument, where the government has said. Dreeben, I guess I would need to know what those are, Justice Sotomayor, because I don't think that that's what we're we're certainly not making that submission in this case. And I think that the cases that we are trying and the jury instructions that we are obtaining contemplate that the disclosure is to a trading relative or friend, and that is the heart of the gift theory. So I don't think that I'm departing from the way that the government. Sotomayor, if I let go of the guy, Justice Alito, then the guy on the street who looks dejected is not my friend or a close relative. Dreeben, Yes. Sotomayor, but I give him a tip and say go trade on this, it will make you a lot of money. That person, that tip or would not be liable. Dreeben, Well, he would, Justice Sotomayor, for the very reason that you yourself articulated. In that situation, there's a gift of information to someone with the intent that the person traded. Now, it doesn't have to be intent. Sotomayor, is it relevant whether it's a friend or family member? Dreeben, My submission is that the best way to understand Dirks is that it goes to a breach of fiduciary duty, which would not be limited to two categories like that. And I don't think that Justice Powell, in articulating this species of personal benefit, was attempting to rely on it. I was trying to explain this before to Justice Breyer. At the end of the opinion where the Court precisely says that Sechrist is not liable because he didn't make any financial advantage, it goes on to say, nor did he make a gift of valuable information to Dirks. Now, the Court didn't say, well, Dirks wasn't a close friend, Dirks wasn't a relative, therefore, he's out of the picture. The Court applied gift analysis in that situation precisely because the line that the Court was trying to draw was between the appropriate use of corporate information and the inappropriate use. But I will say Mr. Dreeben, I get your theory and why it doesn't make any particular difference. And indeed, in that same paragraph where the Court says relatives are friends, the Court, just a sentence before, just talks about an intention to benefit a recipient without any sense of who that recipient has to be. On the other hand, as you say, almost all of these cases are relatives and friends. Dreeben, and things might look different if we had a case that was not a relative or friend. And why not separate out that strange, unusual, hardly ever prosecuted situation and say we're not dealing with that here, we have nothing to say about it? Dreeben, I'm fine with that. We are not seeking the Court to go beyond Dirks. These are the cases that actually do arise in the real world. There is one case that involves a guy who was an insider who tipped his barber, and the district court said, well, the barber and the insider weren't close enough so that it didn't count under Dirks. I think that's wrong. I don't think that there's a good principle for it. But the Court is going to have to go beyond Dirks. Sotomayor So is there a difference between friend and acquaintance as you're talking? Tell me. Dreeben, so this is precisely the reason why I think it doesn't make sense from a point of view of principle or application to draw a distinction that's based on words in the opinion that the Court didn't actually articulate when it applied them to the very situation before it. There is more nebulous features about relationships once you confine it to undefined terms as friends or relatives. But this case clearly doesn't indicate or implicate that at all. It's in the heartland of the insider trading prohibition. It's one brother to another brother. There's a very close relationship. The record is replete with all of that. The Court doesn't have to deal with further outlier cases, and it doesn't have to even interpret it in the way that I have synthesized its analysis in order to conclude that a strict pecuniary gain limitation is inimical to the purposes of the securities laws and inconsistent with a doctrine that the Court has announced and applied for 33 years, and with the exception of the Second Circuit in the Newman case, lower courts haven't had any difficulty applying it. There has been a couple of outlier cases, as I mentioned, involving barbers, but almost all of these cases involve situations in which there's a pretty good explanation for why the tipper would be providing information for the tippee in breach of a fiduciary duty. And in cases when there is a legitimate corporate purpose alleged for the disclosure, which conceivably may have been the concern of the Newman court, Dirk's already addressed that, too. It said that when there is an ostensibly legitimate business justification proffered for the disclosure, people are not going to be wandering around in the dark trying to sort out a subjective intent. There will be objective factors from which the relevant purpose, the personal purpose, can be inferred. And that's the portion of the opinion in which the Court goes through examples of what those objective circumstances will be. It includes the intention to benefit a particular person, and it very specifically includes the gift situation. If the Court feels more comfortable, given the facts of this case, of reaffirming Dirk's and saying, that was the law in 1983, it remains the law today, that is completely fine with the government. I think that there are cases in which it would be clearer and more beneficial to adopt the rule that if there is no corporate purpose, the disclosure to anyone is a breach of the fiduciary duty. But if the Court is more at home with the language that was actually used in Dirk's and wants to reaffirm it, it should do so. Clearly, Congress is aware of this line of cases. It has never disturbed it. It has actually incorporated the words insider trading into Section 10b. It's not like this is a stranger to Congress. When it applied the 10b prohibitions to security swap agreements, this is a well-known area of the law, and the submission of the government is that the Court should reaffirm it. Ginsburg. And for a TIPI like the one we're concerned with, the requirement is that that TIPI know that the information came from an insider?  Dreeben. Yes. He has to know that it came from an insider in breach of a fiduciary duty, and for personal benefit, as I've been articulating it, conscious avoidance can be used to establish that knowledge. The person doesn't have to know all of the details of exactly what the breach of fiduciary duty was. There has to be enough information so that the government can prove beyond a reasonable   We need to show knowledge in order to establish the breach of fiduciary duty. We can and we do rely on conscious avoidance. To the extent that the TIPER understood that the TIPI would trade, that's a requirement of knowledge. It's not a requirement that the person intend that the TIPI trade. It's just an understanding and knowledge that it would happen. The TIPI has to have the knowledge of the breach. Oftentimes, this can be inferred from circumstantial evidence. This is a perfect example of it. The Petitioner in this case was the brother-in-law of the insider. He knew that the information was coming out of Citigroup. He knew that there was no legitimate reason for it to be disclosed from his brother. And in submission, finally, the Court believes that the Government believes that the Court should affirm the judgment in this case. Thank you. Roberts, Thank you, counsel. Ms. Shapiro, you have four minutes remaining. Shapiro, The government's argument to this Court illustrates precisely the dangers with leaving a statute without having a statutory definition. The government now says for the first time in its merits briefs and in its argument to this Court that somehow Section 10b and Dirks embody a duty of loyalty standard that's nowhere in either the statute or the Dirks case. Indeed, they never argued this to the district court, not to the Ninth Circuit, not in the brief in opposition, nor in the Newman case. And the facts of Newman are actually inconsistent with the standard that the government purports to propose, because the government claims that it will insist that the insider has to have an intention that the tippee trade. And if you look at the facts of Newman, you'll see that the undisputed evidence was that with respect to the NVIDIA company tipper, there was no evidence that that insider knew his acquaintance from church was going to trade on the information. And likewise, there wasn't any evidence that the other insider was aware that anyone would trade. And the other the example of the other insider also illustrates that sometimes it's not so clear whether someone has a corporate purpose or a personal purpose, because sometimes purposes are mixed. In that instance, the insider was speaking with an analyst who was checking his financial model, and as the evidence in the case shows, this happens every day in the markets. The government argued that he was also seeking career advice from the other individual who was a college friend, but there's no indication there that he knew he was going to trade. And furthermore, the government's argument is completely inconsistent with Dirks. The facts of Dirks, and it was undisputed on the record, are that the insider, Sechrist, disclosed the information. He was seeking to expose a fraud, but he intended that Dirks would share the information with his institutional clients so that they could trade and drive the price of the stock down. And the Court expressly rejected, in footnote 27, a test almost identical to what the government is proposing here. The SEC, the Court said, appears to contend that an insider invariably violates a fiduciary duty to the corporation's shareholders by transmitting nonpublic corporate information to an outsider when he has reason to believe that the outsider may use it to the disadvantage of the shareholders, and the Court rejected that argument. And later in the footnote, the Court talks about the dissent's argument, and the dissent argued, the Court said, by perceiving a breach of fiduciary duty whenever inside information is intentionally disclosed to securities traders, the dissenting opinion would achieve the same result that the Court had rejected in Chiarella and rejected again. That is effectively a parity of information rule. So the government's test is inconsistent with Dirks. Furthermore, as I believe Mr. Dreeben mentioned, one of the points in the section of the opinion that discusses the test is the concern that courts shouldn't have to read the party's minds as to this element of the offense as opposed to C. Enter. And to the extent the government claims that there's an intentionality element to the breach of duty, that would violate that suggestion in the Dirks case as well. And finally, with respect to the whole remote tippy concept in Petitioner in this case, in this case, Petitioner had no idea why Mehar Carra was disclosing information to his brother. The only thing the record shows is that there was testimony that Michael told him the information came from the brother. There was no evidence he had any idea why, and as I believe Justice Sotomayor pointed out earlier, there were three different reasons at various points that information was disclosed. One was so that he could educate himself about the science of the work that he was doing. One was so that they could discuss potential drugs for their ailing father. And then there was the third phase. But there was no evidence whatsoever that Petitioner had any idea why the information was being disclosed. And finally, with regard to the point about the congressional statute, the fact of the matter is if Congress could be said to have ratified anything, all it could be said to have ratified is that there is an insider trading ban. There is no indication that Congress ever ratified the Dirk's gift language. Thank you, Your Honor. Roberts. Thank you, counsel. The case is submitted.